UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON C. BRAINARD | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| LUTECH RESOURCES, INC. and | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, | § | |
|     Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff **SHANNON C. BRAINARD** (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby files this complaint for damages against Defendants **LUTECH RESOURCES, INC. ("Lutech")** and **LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA")** and would show this honorable court as follows:

### I. JURISDICTION & VENUE

1.01   Subject matter jurisdiction is properly vested in this Court.

1.02   This Court also has personal jurisdiction, both general and specific, over Defendants. Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Texas, have entered into contracts with Texas companies, relating to the issues in this case, have engaged in substantial business transactions with Texas companies in connection with Plaintiff's complaints and as such, are subject to personal jurisdiction in this State.

1.04   Venue is proper in that Defendant Lutech maintains its principal place of business, at all times relevant to this suit, in Harris County, Texas. In addition, a substantial portion of the acts and/or omissions giving rise to these causes of action occurred in this District.

## II. PARTIES AND SERVICE

### A. Plaintiff

2.01   Plaintiff Shannon C. Brainard is an individual domiciled in Chapin, South Carolina.

### B. Defendants

2.02   Defendant Lutech Resources, Inc. ("Lutech") is a corporation organized under the laws of the State of Delaware but with its principal place of business located at 2103 Research Forest Dr., Spring, Texas. Lutech may be served with process by delivering this Complaint and a copy of the Summons to its registered agent as follows:

> Lutech Resources, Inc.
> c/o CT Corporation System
> 1999 Bryan Street, Suite 900
> Dallas, TX  75201

2.03   Defendant Life Insurance Company of North America ("LINA") is a licensed insurer in the State of Texas. Defendant Life Insurance Company of North America may be served with process by delivering this Complaint and a copy of the Summons to their registered agent for service of process at the following address:

> Life Insurance Company of North America
> c/o CT Corporation System
> 350 North St. Paul Street
> Dallas, TX  75201

Defendant LINA is an operating subsidiary of CIGNA. All correspondence in relation to the product issued by Defendant LINA is from "CIGNA."

2.04   Defendants aided and abetted each Defendant in the commission of the tortious acts complained of and therefore every Defendant is liable for all of the Plaintiff's damages and is jointly and severally liable for all of Plaintiff's damages.

### III. FACTS

3.01   Mrs. Shannon Brainard was a full-time employee of Lutech.  Lutech was a subsidiary of Chicago Bridge & Iron.  Mrs. Brainard's late husband, Ralph Brainard, was a full-time employee of Chicago Bridge & Iron.  Lutech and LINA had actual knowledge that Mrs. Brainard was married to Mr. Brainard.

3.02   Lutech and LINA offered and, in July, 2014, Mrs. Brainard selected various plan benefits which provided a variety of life and disability benefits, including a policy for Dependent Spouse Life Insurance benefits.  Defendants Lutech and LINA operated, administered, and/or insured an ERISA benefit plan for employees of Lutech (the "Plan").  As a full-time employee of Lutech, Mrs. Brainard was eligible to and did, in fact, participate in the Plan.

3.03   In connection with the Plan, Mrs. Brainard purchased Dependent Spouse Life Insurance in the amount of $25,000.  Under this coverage option, Mrs. Brainard named herself as the beneficiary to receive such benefits in the event of her husband's death.

3.04   Following Mrs. Brainard's enrollment into the Plan described above, Defendants confirmed such enrollment and, in the following pay periods, Lutech and LINA withheld premiums from Mrs. Brainard's pay consistent with the confirmed coverage amounts.  Lutech and LINA accepted the premiums for the Dependent Spouse Life Insurance benefits with the intent of retaining the same.

3.05   Sometime prior to July, 2014, Mr. Brainard had enrolled in a Group Term Life

policy, FLX 980310, that provided employee coverage for himself and would pay benefits to Mrs. Brainard in the event of his death.

3.06   Tragically, on December 13, 2015, Mr. Brainard passed away.

3.07   Shortly thereafter, Mrs. Brainard notified Lutech and LINA of her husband's death and presented her claim for benefits.  CIGNA paid Mrs. Brainard the benefits, approximately $494,000.00, under the Group Term Life policy in which her husband enrolled.

3.08   On January 20, 2016, LINA issued a denial letter to Mrs. Brainard concerning the insurance benefits payable under the Dependent Spouse Life Insurance policy that Mrs. Brainard had elected and for which she paid the premiums.

3.09   In its denial letter, LINA, as claims fiduciary and insurer of the life coverage options under the plan, LINA contends that the reasons it denied the payment of such benefits was because the policy contains the following provision with regard to eligibility for coverage:

> *Eligibility for Insurance*
>
> *Class of Eligible Persons*
> A person may be insured only once under the Policy as an Employee, Spouse, Dependent Child, even though he or she may be eligible under more than one class.

3.10   However, Defendants Lutech and/or LINA never advised Mrs. Brainard of such provision prior to her enrollment.  Defendants Lutech and/or LINA never advised Mrs. Brainard of such provision each pay period when it withheld the premiums for such policy.  In fact, it wasn't until Mrs. Brainard made a claim for benefits that she was made aware of this provision.

3.11   Notwithstanding the Defendants' knowledge that Mrs. Brainard was married to Mr. Brainard, an employee of Chicago Bridge & Iron, as well as their presumed knowledge as to the terms of the Plan and supporting life insurance policies (which Defendants would

disingenuously use to later deny full coverage), Defendants' nonetheless offered to Mrs. Brainard and allowed Mrs. Brainard to purchase Dependent Spouse Life Insurance coverage.

3.12 Defendants, collectively and/or individually, each allowed, caused or were aware of the withholding of premiums for the coverage under the Dependent Spouse Life Insurance portion of the Plan from Mrs. Brainard's paychecks. Upon information and belief, the premiums paid by Mrs. Brainard were transmitted to Defendant LINA, which received and retained these premiums. However, once a claim was presented for the coverage indisputably purchased by Mrs. Brainard, LINA and Lutech attempted to evade their legal and moral responsibilities to provide the purchased coverage by offering to return the premiums received for the disputed coverage rather than distribute the proceeds of the policy.

3.13 Prior to her husband's death, Lutech and/or LINA also offered to Mrs. Brainard and her husband, separately, Dependent Child coverage for Mrs. Brainard's two children. Lutech and/or LINA, collectively and/or individually, each allowed, caused or were aware of the withholding of premiums for the coverage under the Dependent Child portion of the Plan from both Mrs. Brainard and her husband's paychecks, even though, according to Defendants, Mrs. Brainard and her husband's children could only be insured once under the policy.

3.14 Without conceding or admitting that exhaustion of remedies is required with respect to any of the claims or causes of action contained herein, Mrs. Brainard further alleges that, to the extent required, she has exhausted all available administrative remedies prior to the filing of this lawsuit.

## IV.  CAUSES OF ACTION

### A.  BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF FOR SAME PURSUANT TO 29 USC § 1132(a)(3) (AGAINST ALL DEFENDANTS)

4.01   Plaintiff repeats and re-alleges the allegations set forth elsewhere in this Complaint, as if fully set forth herein.

4.02   Each of the defendants was a fiduciary with respect to the matters alleged herein. Upon information and belief, Lutech is the Plan Administrator and exercised discretion and control over the management of the Plan.  Defendant Lutech exercised discretion and control over the management of the Plan by, *inter alia*, appointing other plan fiduciaries, selecting and/or monitoring third party service providers, managing enrollment into the Plan, as well as by collecting and remitting the premiums paid by Mrs. Brainard.

4.03   Defendant LINA exercised discretionary authority and/or control over the management of the plan by, *inter alia*, denying and/or approving benefit claims under the Plan.

4.04   In light of the provisions of 29 USC § 1104, Defendants, individually and/or collectively, owed the absolute and unequivocal fiduciary duties to Plan participants, including Mrs. Brainard and Mr. Brainard, to do each of the following:

   a.  Fully and accurately communicate to Plan participants the fact and extent of coverage under the Plan;
   b.  Fully and accurately correct any misrepresentations made to Plan participants regarding the fact and extent of coverage under the Plan;
   c.  Fully and accurately communicate to Plan participants their standing and rights in the Plan;
   d.  Fully and accurately correct any misrepresentations made to Plan participants regarding their standing and rights under the Plan;
   e.  Fully and accurately communicate to Mrs. Brainard that she was paying for coverage not available under the Plan (if, in fact, such coverage is established as such);
   f.  Manage the plan and its enrollment in a manner to prevent and/or correct enrollment for coverage or coverage amounts which is not permitted

4.05     Each of the Defendants breached their fiduciary duties to Plaintiff by misrepresenting to Plaintiff the amount of coverage available under the Plan.  In addition, the Defendants' individual and collective failures to accurately communicate coverage rights and standing in the Plan constitute additional breaches of the Defendants' respective fiduciary obligations.

4.06    Defendants expressly and repeatedly represented Plaintiff that Plaintiff had purchased Dependent Spouse Life Insurance in the amount of $25,000.00 (which is the disputed amount).  Such representations were made by written confirmation as to the benefit elections. Defendants allowed Plaintiff to purchase coverage and/or coverage amounts which they, in fact, never intended to provide to Plaintiff.  In addition, Defendants' conduct in accepting and retaining premiums for the disputed $25,000.00 in coverage constitutes a further affirmative representation as to the fact and extent of coverage under the Plan.

4.07    Each of the Defendants breached their fiduciary duties to Plaintiff by failing to administer the Plan in accordance with the best interests of the Plan participants.  Specifically, the Defendants grossly mismanaged the enrollment process by offering for and allowing the purchase of coverage for which Defendants would later deny as unallowable under the terms of the Plan.  Defendants further breached their fiduciary duties by grossly mismanaging the administration of the Plan in that benefits elections in excess of the allegedly allowable coverage amounts and/or inconsistent with available coverage were allowed to continue for months, all to the detriment of Plaintiff.

4.08    Each of the Defendants again breached their fiduciary duties to Plaintiff by failing to administer the Plan in accordance with the best interests of the Plan participants by neglecting to incorporate reasonable - and available - safeguards to prevent and/or correct benefits

enrollments that were inconsistent with the terms of the Plan.

4.09   Each of the Defendants also breached their fiduciary duties to Plaintiff by withholding from Plaintiff's paychecks the premiums for the $25,000.00 in Dependent Spouse Life Insurance coverage under the Plan. Upon information and belief, Defendant LINA further breached its fiduciary duties to Plaintiff by accepting and retaining premiums for the $25,000.00 in coverage purchased by Plaintiff. The Defendants individually and collectively withheld, accepted and retained the premiums for the $25,000.00 in disputed coverage notwithstanding their actual knowledge as to the terms of the Plan which they would later use to deny coverage for the coverage purchased by Plaintiff.

4.10   As a direct and proximate result of the Defendants' various breaches of their respective fiduciary obligations, as embodied in 29 USC § 1104, Plaintiff has suffered damages. Specifically, Mrs. Brainard's husband died without the coverage which she reasonably believed to exist. As matters currently stand, Plaintiff has been denied the $25,0000 in coverage under the Plan. Had the Defendants discharged their fiduciary obligations as noted above, Plaintiff could and would have acquired adequate coverage from alternate sources for the risk which they reasonably believed to have been insured through the Plan.

4.11   Consistent with the United States Supreme Court's ruling in *Cigna Corp. v. Amara*,[1] Plaintiff requests that the Court fashion an appropriate equitable remedy for the Defendants' various breaches of their fiduciary duties, including, but not limited to, reformation of the Plan documents; award of monetary damages in an amount equal to the amount of coverage purchased by Plaintiff but not paid to Plaintiff, whether such recovery is based on a theory of waiver, estoppel, and/or surcharge; and any other relief, equitable and/or legal, to

---

[1] 131 S. Ct. 1866 (2011)

which Plaintiff may show herself to be justly entitled.

### B. CLAIM FOR BENEFITS PURSUANT TO 29 USC § 1132(a)(2)

4.12   Plaintiff repeats and re-alleges the allegations set forth elsewhere in this Complaint, as if fully set forth herein.

4.13   To the extent that the terms of the Plan actually limited Plaintiff's available coverage (which fact is neither admitted or conceded), Defendant Lutech and Defendant LINA's conduct in accepting and retaining premiums for coverage amounts in excess of the allowable amounts constitutes a waiver of any terms in the Plan which might otherwise limit the available coverage not include the disputed $25,000.00.

4.14   As a result of Defendant Lutech and Defendant LINA's waiver of any provisions of the Plan which would purport to limit the coverage available to Plaintiff to not include the disputed $25,000.00, Plaintiff's claim for payment of the policy proceeds is undisputed, as LINA has conceded all other conditions to coverage and payment in its denial letter.   Accordingly, Plaintiff is entitled to payment in the principal amount of $25,000.00.

### C. CLAIM FOR ATTORNEYS' FEES PURSUANT TO 29 USC § 1132(g)(1)

4.15   Plaintiff repeats and re-alleges the allegations set forth elsewhere in this Complaint, as if fully set forth herein.

4.16   Pursuant to 29 USC § 1132 (g)(1), Plaintiff requests that the Court award attorneys' fees and costs incurred in the prosecution of this matter.

### D. VIOLATIONS OF ARTICLE 541, TEXAS INSURANCE CODE (AGAINST ALL DEFENDANTS)

4.17   Plaintiff repeats and re-alleges the allegations set forth elsewhere in this Complaint, as if fully set forth herein.

4.18    The actions of Defendant Lutech and Defendant LINA as alleged above are in violation of statutory sections of the Texas Insurance Code thereby giving rise to a claim for deceptive insurance practices.  Said violations are a producing cause of Plaintiff's damages. Specifically, Defendants misrepresentations violate the Texas Insurance Code in the following respects:

(a) Defendants misrepresented the terms, benefits or advantages of the insurance in violation of Texas Insurance Code Article 541.051.

(b) Defendants made, or directly or indirectly caused to be made, an assertion, representation or statement with respect to insurance that was untrue, deceptive or misleading in violation of Texas Insurance Code Article 541.052.

(c) Defendants misrepresented a material fact in violation of Texas Insurance Code Article 541.061.

(d) Defendants failed to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made in violation of Texas Insurance Code Article 541.061.

(e) Defendants made misrepresentations in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact in violation of Texas Insurance Code Article 541.061.

4.19    Plaintiff sues for her actual damages, in an amount not less than $25,000.00. Plaintiff further sues for trebling of these damages and allege that Defendants' misrepresentations as described herein were committed "knowingly," in that Defendants had actual awareness, at the time of the acts complained of, of the falsity, deception or unfairness of the conduct in question, thereby entitling the jury to award Plaintiff three times her economic damages as additional damages under Article 541.152 of the Texas Insurance Code for which Plaintiff sues.

4.20     Plaintiff further sues for reasonable and necessary attorneys' fees for the preparation and trial of this cause and any appeal therefrom pursuant to Article 541.152, taking into consideration all relevant factors.

### E.  NEGLIGENT MISREPRESENTATION (AGAINST ALL DEFENDANTS)

4.21     Plaintiff repeats and re-alleges the allegations set forth elsewhere in this Complaint, as if fully set forth herein.

4.22     Defendant Lutech and Defendant LINA made representations to Plaintiff, both express and by omission, regarding the amount of coverage available under the Plan.  These misrepresentations, detailed in the factual allegations above, were made either willfully, or alternatively, negligently, without regard for their truth. The misrepresentations were intended by Defendants to be relied upon by Plaintiff and, foreseeably, were reasonably relied upon by Plaintiff.

4.23     Defendants' negligent misrepresentations prevented Plaintiff from fully understanding the extent of coverage purchased in conjunction with the Plan and her respective need to acquire additional insurance on the life of her husband from other available sources

4.24     Plaintiff reasonably and justifiably relied on these misrepresentations and had the right so to rely.  If Plaintiff been told the truth, additional insurance could and would have been procured on the life of Plaintiff's late husband.

4.25     As a result of Defendants' negligent misrepresentations, Plaintiff's husband died without adequate coverage on his life, resulting in economic damages to Plaintiff in an amount not less than $25,000.00.

### F.  FRAUD (AGAINST ALL DEFENDANTS)

4.26     Plaintiff repeats and re-alleges the allegations set forth elsewhere in this

Complaint, as if fully set forth herein.

4.27	Defendant Lutech and Defendant LINA made the misrepresentations alleged above concerning the amount of coverage available to Plaintiff with actual knowledge of the falsity or, alternatively, with conscious indifference as to the falsity of same.

4.28	Defendant Lutech and Defendant LINA made the misrepresentations alleged above for the purpose of collecting premiums for coverage which it never intended to provide. On information and belief, Defendant Lutech and Defendant LINA has engaged in a systematic course of conduct to solicit and receive premiums for coverage which it never intended to provide. On information and belief, Defendants solicit, receive and retain premiums for coverage which it knows it will deny as existing and, in the event that claim is made for such coverage, LINA simply returns or causes the return of the premiums collected, all with the intent of defrauding consumers of both money and coverage.

4.29	On information and belief, Defendants engage in the above-alleged conduct for the purpose of permanently retaining excess premiums collected on apparently non-existent coverage in the very likely event that no claim is ever presented on the policy. On information and belief, Defendants obtain these windfall profits on the vast majority of policies provided, in light of the generally transitive and/or non-permanent nature of employees/plan participants who purchase such insurance, and the relatively unlikeliness of the presentation of a covered claim under such policies. On information and belief, Defendants make no effort to determine and/or return excess premiums paid by employees/plan participants except in the instance the presentation of a claim. Such inaction and/or intentional indifference allowing LINA to retain the fraudulently obtained windfall profits from premiums collected on coverage which LINA never intended to provide.

4.30    Defendant LINA's misrepresentations were reasonably relied upon by Ralph Brainard and Plaintiff and ultimately caused Plaintiff's husband to die without adequate coverage.

4.31    Plaintiff seeks recovery of her actual damages in an amount not less than $25,000.00.  Plaintiff additionally seeks recovery of exemplary and/or punitive damages as allowed by law.

### G.  CIVIL CONSPIRACY

4.32    Plaintiff repeats and re-alleges the allegations set forth set forth elsewhere in this Complaint, as if fully set forth herein.

4.33    Defendants agreed to join in a conspiracy related to the marketing and sale of coverage which Defendants would later, individually and/or collectively, deny as non-existent and/or unavailable.  Defendants further knew that these objects were both unlawful and would be accomplished by unlawful means, such as fraud, misrepresentations, and omissions.

4.34    Defendants had a meeting of the minds on the object of or course of action for this conspiracy. Defendants knew and agreed upon the unlawful object or course of action for this conspiracy.

4.35    As described above, Defendants committed multiple unlawful and overt acts to further the object or course of action for this conspiracy as described above.  Defendants' unlawful and overt acts extend from offering apparently unavailable coverage for sale to Plaintiff to retaining and receiving monies for coverage which Defendants knew they would, individually and/or collectively, deny as non-existent and/or unavailable at the time of solicitation and receipt of the monies.

4.36    These unlawful acts proximately caused the damages suffered by Plaintiff.

Accordingly, Plaintiff is entitled to recover her actual damages, plus costs, attorneys' fees, and pre-judgment interest and post-judgment interest and penalties.

## V.  INTEREST

5.01   Plaintiff requests that the Court award pre-judgment and post-judgment interest at the highest rate allowed by law.

## VI.  JURY DEMAND

6.01   In accordance with Rule 38 of the Federal Rules of Civil Procedure, and the Seventh Amendment to the Constitution of the United States of America, Plaintiff demands a jury trial on all issues so triable.

## VII.  PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that it have judgment against Defendants for the following:

1. Equitable and/or monetary relief as authorized in 29 USC § 1132(a)(3)
2. Damages as alleged and such other amounts as may be proven at trial;
3. Exemplary damages as allowable at law;
4. Treble damages under the Texas Insurance Code;
5. Taxable costs, expenses and reasonable attorneys' fees;
6. Prejudgment and post-judgment interest; and
7. Any such other and further relief as may be just and equitable in the circumstances.

Respectfully submitted,

/s/ Laura Richards Sherry_____
Dalton D. Harris III
State Bar No. 09056775
Laura Richards Sherry
State Bar No. 24056203

>Clayton L. Parry
>State Bar No. 24091417
>THE HARRIS FIRM, P.C.
>5050 West Lovers Lane
>Dallas, Texas 75209
>Telephone:     (214) 956-7474
>Telecopier:    (214) 956-7405
>dalton@harrisfirmpc.com
>austin@harrisfirmpc.com
>laura@harrisfirmpc.com
>**ATTORNEYS FOR PLAINTIFF**